UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES GRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-02986-SEB-MPB |
| ) | |
| LISA BLONT, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

This action is based on James Graham's allegations that he suffered from a persistent rash at New Castle Correctional Facility in 2019 and 2020 and the medical staff was deliberately indifferent to his need for treatment. The defendants seek summary judgment on the affirmative defense that Mr. Graham failed to exhaust available administrative remedies before filing suit. For the following reasons, the motion for summary judgment is **granted**, and this action is **dismissed**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana Univ.,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Mr. Graham failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285–86 (7th Cir. 1997) (affirming grant of summary judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). This does not alter the summary judgment standard, but it does

"[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Thus, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

## II. The Prison Litigation Reform Act

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," the defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Graham] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word

3

'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### III. Facts

At screening, the Court summarized the allegations in Mr. Graham's complaint as follows:

> In December 2019, Mr. Graham developed "small red puss bumps" that were painful and itchy and interfered with his sleep. Dkt. 1 at 4. He submitted a medical request and was seen by Nurse Blont. It is not clear how soon Mr. Graham saw Nurse Blont or what occurred during their interaction.
>
> Several weeks later, Mr. Graham saw Dr. Johnson. She gave Mr. Graham medication, but her diagnosis was incorrect, and his condition worsened.
>
> In June or July 2020, Mr. Graham submitted another medical request. He saw Dr. John, who simply said he could not do anything to help Mr. Graham.

Dkt. 7 at 2.

The Indiana Department of Correction's (IDOC) Offender Grievance Process (OGP) is an administrative remedy program designed to allow inmates "to express complaints and topics of concern for the efficient and fair resolution of legitimate offender concerns." Dkt. 29-7 at 1 (eff. Oct. 1, 20215). The IDOC implemented a revised version of the OGP during the time Mr. Graham attempted to utilize its administrative remedies. Dkt. 29-8. (eff. Apr. 1, 2020). No difference between the two versions is material to this case. Where applicable, the Court cites the operative provisions of both versions.

**A.    The Grievance Process**

Inmates can use the OGP to resolve concerns about "[a]ctions of individual staff" and "concerns relating to conditions of care or supervision within the [IDOC] or its contractors." Dkt. 29-7 at 3; dkt. 29-8 at 3. Both versions of the OGP require at least three steps:

 (1) a formal grievance;

 (2) an appeal to the warden; and

 (3) a second appeal to the Department Offender Grievance Manager.

Dkt 29-7 at 9–13; dkt. 29-8 at 9–13.

If unable to resolve his concern informally, the inmate must submit a formal grievance. Dkt. 29-7 at 9–11; dkt. 29-8 at 9–11. Within five business days, an Offender Grievance Specialist (OGS) must either accept and log the formal grievance or reject it for failing to meet basic standards. Dkt. 29-7 at 10; dkt. 29-8 at 10.  If the OGS does not reject the grievance, she must respond in writing within 15 business days. Dkt. 29-7 at 10–11; dkt. 29-8 at 10–11.

If dissatisfied with the grievance response, the inmate must submit an appeal to the OGS within five business days. Dkt. 29-7 at 11–12; dkt. 29-8 at 12. Within one business day, the OGS must forward the appeal form and other relevant documents to the warden, complete a form acknowledging receipt of the appeal, and forward a copy of that form to the inmate. Dkt. 29-7 at 12; dkt. 29-8 at 12.

### B. Mr. Graham's Grievances

According to the defendants, Mr. Graham submitted two formal grievances concerning his rash. The first is dated April 2, 2020. Dkt. 29-3. OGS Hannah Winningham received the grievance on April 3 and responded on April 7. *Id.*; dkt. 29-4. The second is dated July 27, 2020. Dkt. 29-5. Ms. Winningham received it on August 7 and responded on August 28. *Id.*; dkt. 29-6.  Nothing in the record indicates that Mr. Graham appealed either grievance.

Although Mr. Graham did not respond to the summary judgment motion, he attached several grievance documents to his complaint. *See* dkt. 1-1. In addition to the April 2 and July 27 grievances, Mr. Graham attached several grievances that Ms. Winningham rejected without providing a formal response. *Id.* at 2–3, 5–14. In one case, Ms. Winningham determined that

5

Mr. Graham submitted his grievance too late. *Id.* at 12. In another, she directed Mr. Graham to contact the health services administrator directly. *Id.* at 10. In every other case, Ms. Winningham determined that the grievance had already been addressed. *Id.* at 3 ("Grievance Addressed."); 6 ("Grievance Addressed."); 8 ("There was an issue . . . . That has been corrected[.]"); 14 ("Grievance Resolved."). This is not a proper basis for rejecting a grievance under either version of the OGP. *See* dkt. 29-7 at 9; dkt. 29-8 at 10. And, without a grievance response, Mr. Graham could not appeal any of those grievances. Dkt. 29-7 at 11 ("The offender shall be permitted to appeal *the response* . . . ."); dkt. 29-8 (same).

Of the rejected grievances, three expressed concerns about treatment for Mr. Graham's rash. Dkt. 1-1 at 2–3, 5–6, 11–12. The latest of these was dated June 24, 2020, and returned June 29—weeks before Ms. Winningham responded to his formal grievance on August 28. *See* dkt. 1-1 at 11–12; dkt. 29-5; dkt. 29-5. He submitted a grievance on September 8 stating that he had been charged multiple times for treatment related to his rash and requesting a refund. Dkt. 1-1 at 13. This grievance did not discuss the treatment he was (or was not) receiving for his rash or request additional or different treatment.

Mr. Graham's submissions do not include any grievance appeals or evidence that he attempted to appeal grievances to which Ms. Winningham responded.

## IV. Analysis

The record establishes beyond dispute that Mr. Graham failed to "take all steps prescribed by the" OGP. *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004). Ms. Winningham responded to two grievances regarding Mr. Graham's rash, and the OGP required him to appeal those grievances. He never did, so he did not exhaust the remedies available under the OGP.

6

Of course, an inmate "need not exhaust unavailable" remedies. *Ross*, 136 S. Ct. at 1858. The record indicates that Ms. Winningham improperly rejected several formal grievances and deprived Mr. Graham of formal grievance responses that he could have appealed. Nevertheless, it does not appear that Ms. Winningham rendered the OGP unavailable.

The OGP was not a "simple dead end." *Ross*, 136 S. Ct. at 1859. Mr. Graham received at least two appealable grievance responses, and he did not appeal either of them. Importantly, the last of Mr. Graham's grievances addressing treatment for his rash was the grievance dated July 27, 2020, and he received an appealable response to that grievance. Dkts. 29-5, 29-6. He had an opportunity to appeal that grievance and did not do so.

The OGP was not "so opaque" that "no ordinary prisoner [could] discern or navigate it." *Ross*, 136 S. Ct. at 1859. The record suggests that Ms. Winningham improperly rejected some, but not all, of Mr. Graham's formal grievances. There is no evidence that the OGP was practically "incapable of use," at least in the two cases where Mr. Graham received appealable grievance responses. *Id.*

Finally, there is no evidence that Ms. Winningham "thwart[ed]" Mr. Graham "from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860. No doubt, Ms. Winningham's review and handling of formal grievances was inconsistent and sometimes contrary to the OGP. But she did not systematically prevent Mr. Graham from bringing grievance appeals. In two cases—including the last grievance raising treatment for his rash—she issued appealable grievance responses, and Mr. Graham simply failed to appeal them.

The only reasonable conclusion is that administrative remedies were available to Mr. Graham and he failed to pursue them to exhaustion. Summary judgment is appropriate.

## V. Conclusion

The defendants' motion for summary judgment, dkt. [27], is **granted**. This action is **dismissed without prejudice**. *See Ford*, 362 F.3d at 401 ("*[A]ll* dismissals under § 1997e(a) should be without prejudice.") (emphasis in original). The **clerk is directed** to enter **final judgment** consistent with this entry and the screening entry at dkt. 7.

**IT IS SO ORDERED.**

Date: 10/01/2021

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JAMES GRAHAM
165961
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Sarah Jean Shores-Scisney
KATZ KORIN CUNNINGHAM, P.C.
sshores@kkclegal.com